Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| FIDEICOMISO CBV, representado por CARLOS MANUEL BARENS PÉREZ<br><br>Recurrido<br><br>v.<br><br>CONSEJO DE TITULARES DEL CONDOMINIO NÁUTICA DEL MAR, y su JUNTA DE DIRECTORES presidida por el SR. MIGUEL APONTE<br><br>Peticionarios | KLCE202400632 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Civil Núm.: MZ2021CV00639 (206)<br><br>Sobre: Cobro de Dinero, Incumplimiento de Contrato |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard.

Álvarez Esnard, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece ante nos el Consejo de Titulares del Condominio Náutica del Mar ("Consejo de Titulares") y su Junta de Directores (en conjunto "los Peticionarios") mediante *Solicitud de Certiorari,* presentada el 6 de junio de 2024. Nos solicita que revoquemos una *Resolución* emitida y notificada el 14 de marzo de 2024, por el Tribunal de Primera Instancia, Sala de Superior de Mayagüez ("foro primario" o "foro *a quo*"). Por virtud de esta, el foro primario denegó una solicitud de sentencia sumaria presentada por los Peticionarios. En desacuerdo, el 1 de abril de 2024, el Consejo de Titulares presentó una solicitud de reconsideración, la cual fue declarada *No Ha Lugar,* mediante *Resolución* emitida el 7 de mayo de 2024, notificada al próximo día.

Por los fundamentos expuestos a continuación, **DENEGAMOS** la expedición del auto de *certiorari*.

Número Identificador

SEN(RES)2024_____

**I.**

La presente controversia tiene su origen en una *Demanda* sobre sentencia declaratoria e interdicto permanente instada por el Fideicomiso CBV, representado por el señor Manuel Barens Pérez ("Fideicomiso" o "Recurridos"), contra el Peticionario.[1] En síntesis, alegó el Fideicomiso que era el dueño del apartamento A-502 del Condominio Náutica del Mar ("Condominio"), el cual está sujeto al régimen de propiedad horizontal por virtud de la Escritura Número Quinientos Ochenta y Siete (587), titulada *Escritura Matriz de Dedicación al Régimen de Propiedad Horizontal del Condominio Náutica del Mar*, otorgada el 20 de noviembre de 2008, ante el notario Gary E. Biaggi Silva, ("Escritura Matriz").

Arguyó que su apartamento colinda por el Norte con "elemento exterior y terraza", según surge de la Escritura Matriz. Señaló que la terraza guarda continuidad y proximidad con su apartamento, de manera que corresponde considerar dicha terraza como anejo. Indicó que incluir la terraza como parte de la cabida del apartamento, para fines del cómputo del porciento de participación, es contrario a la *Ley de Condominios*, Ley Núm. 104 de 25 de junio de 1958, según enmendada.[2] Sostuvo que le remitió varias comunicaciones a la Junta de Directores del Condominio para que corrigieran el cómputo de sus aportaciones y la omisión de éstos en atender sus reclamos, le continuaba provocando un sobrepago de las cuotas de mantenimiento, seguro comunal y demás gastos del Condominio. Por tanto, se ha visto obligado a retener el pago de la porción de la póliza de seguro, objetando su cómputo.

Por lo anterior, solicitó los siguientes remedios: 1) que se emitiera una orden de interdicto permanente, para que el Consejo

---

[1] Apendice *certiorari*, págs. 1-16.
[2] El aludido documento hace referencia a las disposiciones de la Ley Núm. 104 de 25 de junio de 1958, según enmendada, 31 LPRA ant. sec. 1291. No obstante, aclaramos que este fue derogada y sustituida por la Ley Núm. 129 de 16 de agosto de 2020, según enmendada, 31 LPRA sec. 1921 *et seq.*

de Titulares cese del cobro de las cuotas de mantenimiento, seguro comunal y demás gastos, basados en un cómputo incorrecto de los porcientos de participación; 2)que se dictara sentencia declaratoria decretando la nulidad de la distribución de los porcientos de participación y que se establecieran los porcentajes correctos; y 3) que se condenara a los Peticionarios al pago de costas y honorarios de abogado por temeridad.

Posteriormente, el 16 de junio de 2021, el Fideicomiso presentó *Demanda Enmendada*, a los fines de eliminar la causa de acción de *injunction* permanente e incluir una causa de acción sobre cobro de dinero por el exceso de pago de las cuotas de mantenimiento.[3]

En respuesta, el 12 de agosto de 2024, el Consejo de Titulares presentó *Contestación a Demanda Enmendada y Reconvención*.[4] En su contestación a la demanda, el Consejo de Titulares expuso que la terraza del aparamento A-502 no es un anejo, sino parte integral del apartamento. Por tanto, el cómputo de su porciento de participación es legal y correcto.

En cuanto a la reconvención, arguyó que el Fideicomiso había dejado de pagar las cuotas de mantenimiento y el seguro comunal desde octubre de 2019, adeudando una cantidad de $6,486.58, más las penalidades e intereses. Además, instó una causa de acción de reivindicación de espacio comunal, en la cual argumentó que el apartamento en controversia colinda por el área Este con un cuarto mecánico que es comunal. No obstante, alegó que el Fideicomiso se había apropiado del mencionado cuarto mecánico para su uso privativo. Por tanto, solicitó que se ordenara el desalojo dicho espacio comunal. Finalmente, peticionó el embargo preventivo de los

---

[3] *Íd*, págs. 312-326.
[4] *Íd*, págs. 352-358.

bienes del Fideicomiso del monto aproximado de $21,486.58 y que se ordenara su inscripción el Registro de la Propiedad.

Transcurridos varios trámites procesales, el 27 de diciembre de 2022, notificada el 29 del mismo mes y año, el foro primario dictó *Sentencia Sumaria Parcial*, en la que desestimó con perjuicio la demanda instada por el Fideicomiso, quedando pendiente de adjudicación la reconvención.[5] Insatisfecho con dicha determinación, el Fideicomiso acudió ante esta Curia mediante recurso de apelación ("KLAN202300087"). Evaluados los argumentos de las partes, el 26 de abril de 2023, notificada el 28 del mismo mes y año, este Panel dictó *Sentencia*, en la que confirmó el dictamen emitido por el foro primario.[6] Insatisfecho, el Fideicomiso acudió ante el Tribunal Supremo mediante petición de *certiorari* ("CC-2023-0337"), la cual fue declarada *No Ha Lugar,* mediante *Resolución* emitida el 23 de junio de 2023.[7]

Remitido el correspondiente mandato y luego de varias incidencias procesales, el 4 de enero de 2024, el Consejo de Titulares presentó *Solicitud de Sentencia Sumaria Final*.[8] Por virtud de esta, señaló que procedía que se dictara sentencia sumaria ordenando el cobro de la deuda de mantenimiento y otros gastos del Fideicomiso, además de que se haga constar el carácter comunal del cuarto mecánico. Sostuvo que el Fideicomiso se apropió indebidamente de un cuarto mecánico, el cual ya había entregado. Sin embargo, el Consejo de Titulares solicitó que se diera constancia de la reivindicación en la posesión del Condominio sobre el espacio denominado como el cuarto mecánico. En cuanto a la deuda, expuso que el Fideicomiso adeudaba unas cuantías en concepto de cuotas de mantenimiento y seguro comunal, además, de penalidades y

---

[5] *Íd,* págs. 645-653.
[6] *Íd,* págs. 667-684.
[7] *Íd,* pág. 809.
[8] *Íd,* págs. 819-866.

recargos.[9] Esgrimió, además, que la *Ley de Condominios de Puerto Rico*, Ley Núm. 129 de 16 de agosto de 2020, según enmendada, es el cuerpo legal aplicable a la reclamación de autos y que tanto la precitada Ley como el Reglamento del Condominio y su Escritura Matriz imponen el pago de honorarios de abogado, el cual constituye un gravamen a la propiedad. Añadió que, para la imposición de estos honorarios de abogados, no es necesario que se emita una determinación de temeridad. Finalmente, solicitó que se ordenara a la Unidad de Cuentas del Tribunal que desembolsara a favor del Condominio Náutica del Mar la cantidad depositada de $9,971.45.

En oposición, el 5 de febrero de 2024, el Fideicomiso instó un escrito intitulado *Oposición a "Solicitud de Sentencia Sumaria Final" presentada por el Consejo de Titulares del Condominio Náutica del Mar y su Junta de Directores Presidida por el Sr. Miguel Aponte.*[10] En este, afirmó que no procedía que se dictara sentencia sumaria, puesto que existían controversias sobre las cuantías reclamadas por el Consejo de Titulares, así como los pagos de la póliza de seguros. Explicó que el Consejo de Titulares le reclama el pago de la póliza para el periodo 2019-2020, las cuales alegó habían sido sufragadas mediante cheque y el Consejo de Titulares se negaba a reconocer dicho pago. Señaló que el Peticionario aseveró que dicho pago obedecía a una deuda de la póliza de seguros del periodo de 2018-2019, por ser idénticas las cuantías a pagar para dichos periodos. Añadió que existía controversia sobre los cómputos realizados para el cobro de principal e intereses. Asimismo, consideró que los

---

[9] El Consejo de Titulares desglosó la deuda de la siguiente manera:
   a. póliza de seguro para el periodo 2019-2020: $3,235.84
   b. póliza de seguro para el periodo 2020-2021: $2,547.15
   c. póliza de seguro para el periodo 2021-2022: $2,754.92
   d. póliza de seguro para el periodo 2022-2023: $2,622.41
   e. penalidades y recargos: $3,268.00
   f. gastos legales: $39,458.00
   g. depósito en el Tribunal de Primera Instancia: $9,971.45
   h. total: $43,914.87
Véase Apéndice *certiorari*, pág. 829.
[10] *Íd*, págs. 882-999.

reclamos sobre la reivindicación del cuarto mecánico son académicos.

En cuanto a los honorarios de abogado, razonó que estos eran improcedentes en derecho, ya que no se había emitido una determinación de temeridad del foro primario. Sobre las alegaciones relacionadas a que la Ley de Condominios de Puerto Rico, *supra*, impone el pago de honorarios de abogado como gravamen, sostuvo que estos solo proceden en reclamaciones de cuotas de mantenimiento y derramas, lo cual no es el caso de autos. Por lo cual, solicitó que se concedieran los honorarios de abogado a su favor, por la temeridad de tener que litigar un pleito innecesario.

Evaluados los argumentos esbozados por las partes, el 14 de marzo de 2024, el foro *a quo* emitió la *Resolución* recurrida, en la que determinó que los siguientes hechos no están en controversia:

1. El 19 de mayo de 2021, la parte demandante presentó una Demanda contra el Consejo de Titulares del Condominio Náutica del Mar y su Junta de Directores, presidida por el señor Miguel Aponte (en conjunto, parte apelada).

2. El Condominio Náutica del Mar está sometido al régimen de propiedad horizontal desde el 20 de noviembre de 2008, durante la vigencia de la Ley Núm. 104-1958, según enmendada.

3. El Condominio Náutica del Mar es un condominio residencial, localizado en Cabo Rojo, Puerto Rico, que está sujeto al régimen de propiedad horizontal por virtud de la Escritura Pública Núm. 587, intitulada "Dedicación al Régimen de Propiedad Horizontal del Condominio Náutica del Mar", otorgada el 20 de noviembre de 2008 en Cabo Rojo, Puerto Rico, ante el Lcdo. Gary E. Biaggi Silva (escritura matriz).

4. El señor Carlos Manuel Barens Pérez es fiduciario de quien fuera el titular del apartamento, Pent-house (PH), A-502 del Condominio Náutica del Mar.

5. La escritura matriz del Condominio Náutica del Mar describe específicamente el apartamento A-502 de la siguiente manera:

**APARTAMENTO A GUION QUINIENTOS DOS (A-502)**

**URBANA: PROPIEDAD HORIZONTAL:** Apartamento número A (sic) guion quinientos dos (A-502), para fines residenciales, localizada en el quinto nivel del edificio "A" del Condominio Náutica del Mar, en el sector el Combate, Barrio Boquerón del término municipal de Cabo Rojo, Puerto Rico. Tiene un área privada de vivienda de **DOS MIL QUINIENTOS TREINTA Y NUEVE PUNTO MIL OCHENTA Y DOS (2,539.1082) PIES CUADRADOS**, equivalentes a doscientos

treinta y cinco punto ocho mil novecientos ocho (235.8908) metros cuadrados. Colinda por el **NORTE,** con elemento exterior y terraza; por el **SUR;** con el apartamento A quinientos uno (A-501); por el **ESTE** con elemento exterior, área común, escaleras numero dos (2), elevador y cuarto mecánico; y por el **OESTE,** con elemento exterior.

El apartamento contiene una (1) habitación con su respectivo guardarropa, dos (2) baños, sala, "family room", comedor, cocina, lavandería, balcón, terraza techada y espacio abierto. Su puerta de entrada y salida por su colindancia Este, que, a su vez, da acceso a área común y escaleras. Le corresponde el uso de dos (2) estacionamientos identificados con el número A guion quinientos dos (A-502) en el plano de inscripción.

**Le corresponde el cinco punto doce por ciento (5.12%) de participación en los elementos comunes generales y el diez por ciento (10%) de participación en los elementos comunes limitados.** (Énfasis en original).

6. La parte demandada, Consejo de Titulares Del Condominio Náutica del Mar y su Junta de Directores Presidida por el Sr. Miguel Aponte, presentó una Solicitud de Sentencia Sumaria contra la parte demandante, Fideicomiso CBV, representado por Carlos Manuel Barens Pérez, sobre alegaciones del cobro de dinero sobre ciertas pólizas de seguro, intereses, penalidades, así como honorarios de abogados.

7. La parte demandante se opuso a dicha solicitud por ser improcedente en derecho, y por existir controversias sustanciales de hecho sobre las sumas reclamadas.

8. El Fideicomiso CBV consignó en el Tribunal $9,971.45. (Énfasis en original).

Asimismo, el foro primario concluyó que existe controversia sobre los siguientes hechos:

1. Existe controversia sobre el reclamo de la deuda según se expuso en la demanda, así como el pago de las pólizas de seguro. Se alega que el pago realizado, según los demandados – reconvinientes, era para la póliza del año 2018-2019. Según las representaciones de dicha parte esto obedece a que el pago de ambos años eran idénticos. Las certificaciones y facturas, anejadas a la Declaración Jurada establecen que existe controversia sobre ese hecho esencial.

2. Existe controversia en la forma en que se realizaron los cómputos por la parte demandada de principal e intereses, así como el efecto de la consignación realizada por la demandante en relación con los reclamos de la demandada en su reconvención.

3. La procedencia del reclamo de honorarios de abogado está en controversia. Tanto porque existe una disputa entre los litigantes sobre la existencia misma de la deuda sobre cuotas de mantenimiento. Si la escritura matriz y el reglamento del condominio proveen para la imposición de honorarios de abogados por el reclamo del pago del seguro del Condominio y si en efecto, la ley de condominio establece como un gravamen y aplicación automática, la concesión de honorario de abogado como plantea la demandada en su petición.

4. Si en efecto la parte demandada no proveyó copia de los documentos de la póliza de Seguros a lo que todo titular tiene derecho y si ha prolongado innecesariamente el presente litigio.

5. Determinamos[,] además[,] que existe controversia sobre el efecto de la consignación en cuanto a la extinción de la obligación que se reclama debido a las controversias de hecho entre las partes.

En esencia, el foro primario determinó que existían controversias materiales que impedían que dictara sentencia por la vía sumaria. Resolvió que las alegaciones relacionadas con la reivindicación del cuarto mecánico eran académicas. Sobre las alegaciones relacionadas a los honorarios de abogado, el foro *a quo* expresó lo siguiente:

> Luego de examinar leyes aplicables y la jurisprudencia sobre los honorarios de abogado en este caso, **se resuelve que al interpretar las disposiciones de la escritura matriz, el reglamento de condominios y la Ley de condominios, la imposición de honorarios de abogado no es un gravamen automático y por tanto requiere que el Tribunal determine si alguna de las partes actuó con temeridad con todo lo que ello conlleva.** En este sentido, se establece que en su momento, y después de evaluar las controversias, será el Tribunal quien imponga esta partida, incluyendo su cuantía si se determina que procede en derecho.
>
> En fin, en este momento este tribunal entiende que no está en posición de resolver a favor de ninguna de las partes por existir controversia sobre las cantidades reclamadas que no son parte de los honorarios, las cuales impiden que se pueda dictar una sentencia sumaria […]. (Énfasis nuestro).

En descuerdo con tal determinación, el 1 de abril de 2024, el Consejo de Titulares presentó un escrito intitulado *Solicitud de Reconsideración sobre el derecho en la Resolución denegatoria de sentencia sumaria final y nuestra reconvención compulsoria.[1]* Mediante *Resolución* emitida el 7 de mayo de 2024, notificada al próximo día, el foro primario declaró *No Ha Lugar* la solicitud de reconsideración.[2]

Inconforme aun, el 6 de junio de 2024, el Consejo de Titulares acudió ante esta Curia mediante *Solicitud de Certiorari,* y le imputó al foro primario la comisión de los siguientes errores:

---

[1] *Íd*, págs. 1013-1023.
[2] *Íd*, págs. 1037-1038.

Erró el TPI al no determinar que nuestra reconvención es una compulsoria que forzó la activación de los incisos en la escritura matriz y el Reglamento sobre las costas y honorarios contractuales.

Erró el TPI al resolver que las costas y honorarios contractuales pactados en la escritura matriz y el Reglamento requieren que el tribunal haga determinación de temeridad.

Acompañó su petición de *certiorari*, con una *Moción Urgente en Solicitud de Orden en Auxilio de Jurisdicción a Tenor con la Regla 79 del Reglamento de este Tribunal*. A esos fines, solicitó, en auxilio de jurisdicción, que se paralizaran los procedimientos ante el foro primario. El 14 de junio de 2024, esta Curia emitió *Resolución*, en la que declaramos *No Ha Lugar*, la solicitud en auxilio de jurisdicción. Además, le concedimos hasta el 18 de junio de 2024 a la parte Recurrida para que presentara su oposición al recurso. En cumplimiento con lo ordenado, el 18 de junio de 2024 la parte Recurrida presentó *Oposición a Certiorari.*

Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración.

**II.**

**A. *Certiorari***

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.,* 203 DPR 708, 718 (2019). "El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior". *Rivera et al. v. Arcos Dorados et al.,* 212 DPR ___ (2023); 2023 TSPR 65 resuelto el 8 de mayo de 2023. Véase, además, *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, establece que el recurso de *certiorari* solo se expedirá cuando se

recurra de (1) una resolución u orden sobre remedios provisionales o *injunction* o (2) la denegatoria de una moción de carácter dispositivo. Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (4) en casos que revistan interés público. *Íd.* De igual manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Íd.* Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni sin parámetros. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019). La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari*. Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR __ (2023), 2023 TSPR 145, resuelto el 19 de diciembre de 2023. Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction, supra,* págs. 712-713. No obstante, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión". 32 LPRA Ap. V, R. 52.1.

### B. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal cuyo propósito principal es facilitar la solución justa, rápida y económica de los litigios que no presentan controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio a fondo. *Birriel Colón v. Supermercado Los Colobos e Integral Assurance Company,* 213 DPR ___ (2023), 2023 TSPR 120, resuelto el 3 de octubre de 2023; *Segarra Rivera v. Int'l Shipping et al.,* 208 DPR 964, 979 (2022). La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, permite que, en un litigio, cualquiera de las partes le solicite al tribunal que se dicte sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra.* No obstante, para que una sentencia sumaria proceda, es necesario que de los documentos que la acompañan, se demuestre que no existe una controversia real sobre los hechos y solo reste aplicar el derecho. *Birriel Colón v. Supermercado Los Colobos e Integral Assurance Company, supra; SLG Szendrey v. Consejo de Titulares,* 184 DPR 133, 138 (2011); *Ramos Pérez v. Univisión de Puerto Rico, Inc.,* 178 DPR 200, 214 (2010).

Para poder demostrar eficientemente la falta de controversia sobre hechos esenciales, el promovente de la sentencia sumaria debe: (1) exponer las alegaciones de las partes; y (2) desglosar en párrafos debidamente enumerados los hechos sobre los cuáles, a su

entender, no hay controversia. Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3.

En *Meléndez González et al. v. M. Cuebas,* 193 DPR 100 (2015), el Tribunal Supremo estableció "el estándar específico" que debe utilizar este Foro al "revisar denegatorias o concesiones de Mociones de Sentencia Sumaria". A esos efectos, el Tribunal dispuso que:

> el Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 679 (2018), citando a *Meléndez González et al. v. M. Cuebas, supra,* págs. 118-119.

Es decir, planteada una revisión de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición que el Tribunal de Primera Instancia para resolver, por lo que debe evaluar las mociones presentadas en el foro primario y cumplir con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra,* al emitir su dictamen. *Meléndez González et al. v. M. Cuebas, supra.* "[L]a revisión del foro apelativo conlleva examinar *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el tribunal de instancia y realizando todas las inferencias permisibles a su favor". *Birriel Colón v. Supermercado Los Colobos e Integral Assurance Company, supra,* citando a *Meléndez González et al. v. M. Cuebas, supra.*

### III.

La parte aquí Peticionaria nos solicita nuestra intervención discrecional por vía del recurso de autos, a los efectos de que

revoquemos la *Resolución* emitida por el foro primario, en la que, en el ejercicio de su discreción, determinó que existían controversias reales y materiales que impedían se dictara sentencia sumaria. Aun cuando la Regla 52.1 de Procedimiento Civil, *supra,* nos faculta a revisar las denegatorias de mociones de carácter dispositivo, como lo es la sentencia sumaria, resolvemos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos. La Peticionaria no ha demostrado que el foro primario abusó de su discreción o que medió error, pasión, prejuicio o parcialidad al emitir la determinación impugnada. Tampoco la Peticionaria logró demostrar que el foro *a quo* se equivocó en la interpretación del derecho, que justifique nuestra intervención. Por virtud de lo anterior, procede denegar el recurso de epígrafe.

## IV.

Por los fundamentos expuestos, **DENEGAMOS** la expedición del auto de *certiorari*. En consecuencia, devolvemos el caso al foro primario para la continuación de los procedimientos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones